UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MAUREEN POMYKACZ, | : | |
| | : | |
| Plaintiff, | : | HONORABLE JOSEPH E. IRENAS |
| | : | CIVIL ACTION NO. 03-5677 (JEI) |
| v. | : | |
| | : | **OPINION** |
| BOROUGH OF WEST WILDWOOD, | : | |
| JACQUELINE FERENTZ, and | : | |
| CHRISTOPHER FOX, | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

BARRY, CORRADO, GRASSI & GIBSON, PC
By:  Frank L. Corrado, Esq.
     Joseph C. Grassi, Esq.
2700 Pacific Avenue
Wildwood, New Jersey 08260
           Counsel for Plaintiff

LAW OFFICES OF JAMES P. SAVIO
By:  James P. Savio, Esq.
9220 Amherst Avenue, 1st Floor
P.O. Box 3163
Margate, New Jersey 08402
           Counsel for Defendants Borough of West Wildwood
           and Christopher Fox

BAKER, DOUGLASS & SCOTT, PC
By:  Michelle J. Douglass, Esq.
210 Road, Suite 12
Linwood, New Jersey 08221
           Counsel for Defendant Jacqueline Ferentz

**IRENAS**, Senior District Judge:

    Plaintiff Maureen Pomykacz ("Pomykacz") brings claims

pursuant to 42 U.S.C. §§ 1983 and 1985 asserting that Defendants

violated her constitutional rights by arresting and prosecuting

her for stalking Defendants Jacqueline Ferentz and Christopher

Fox.  Pomykacz also asserts state common law claims of false arrest, malicious prosecution and civil conspiracy.  Before the Court are the Motion for Summary Judgment of Defendants Borough of West Wildwood (the "Borough") and Fox and the Motion for Summary Judgment of Defendant Ferentz.[1]

## I.

Pomykacz considers herself a "citizen activist."  As such, she has taken it upon herself to monitor the activities of the police force and the mayor of West Wildwood, the borough in which she has lived for over ten years.[2]  During 2002, Pomykacz became concerned about two issues involving Ferentz, a West Wildwood police officer and Fox, the mayor of West Wildwood.  First, Pomykacz and others in the community believed that Officer Ferentz and Mayor Fox were having a romantic relationship, which raised concerns in Pomykacz's mind about nepotism, conflict of interest, and preferential treatment of Ferentz with respect to the terms of her employment.[3]  Second, Borough police officers were engaging in volunteer work by helping to make renovations to

---

[1]  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

[2]  The Borough of West Wildwood is approximately one quarter of a square mile with a police force of less than ten officers, including the chief of police.  As of the last census, the total population of West Wildwood was 448 people.

[3]  Pomykacz was also friendly with Mayor Fox's then wife, Debbie Fox, because they lived on the same street.

2

the Borough's municipal building, but Pomykacz and others became concerned that the officers, including Officer Ferentz, were helping with the renovations during their patrol shifts and being paid overtime for their work without the public's knowledge.  The municipal building houses the police headquarters and is located around the corner from Pomykacz's home.

These concerns prompted Pomykacz to begin monitoring Officer Ferentz and Mayor Fox.  Pomykacz's "monitoring" activities included taking photographs of Officer Ferentz with a disposable camera, although the parties dispute how frequently and under what circumstances the pictures were taken.  According to Pomykacz, she only took a picture of Officer Ferentz or her patrol vehicle on three separate occasions and all three times Pomykacz believed that she was documenting Officer Ferentz's activities while on duty.  She threw away the camera without developing the pictures.

Defendants' version of the story is that Pomykacz drove past and stopped in front of the house in which Mayor Fox and Officer Ferentz both live[4] at least a dozen times[5] at all hours of the day and night, and sometimes followed Officer Ferentz during

---

[4]  Officer Ferentz states that she is the landlord and owner of the house in which she, Mayor Fox, and his brother currently live.  Mayor Fox's brother was the Chief of Police at the time the events occurred.

[5]  Officer Ferentz asserts Pomykacz drove by at least a dozen times, (Ferentz Ex. M),  whereas Mayor Fox estimates Pomykacz drove by the house "well over 50 [times]" between April 2002 and October 2002.  (Fox Ex. D at p. 13)

3

times when she was on and off duty.  In particular, Officer
Ferentz asserts that Pomykacz once followed her to the house of
Officer Ferentz's father and stopped several times in front of
the house while Officer Ferentz was off duty and visiting her
father.  On another occasion, Officer Ferentz asserts that, while
in her home, she observed Pomykacz on her property taking
photographs around the dumpster.  Pomykacz specifically denies
each aspect of the Defendants' version of events.[6]

It is against this backdrop that the events immediately
giving rise to the present suit occurred.  On the night of
October 7, 2002, on her way to Wildwood, Pomykacz drove past the
borough municipal building and observed Officer Ferentz working
on renovations while she was on duty.  Later that night, after
Pomykacz had returned from Wildwood, she photographed Officer
Ferentz in the police headquarters.[7]  Another police officer and
Mayor Fox were also present in the police station at the time.
According to Pomykacz, Mayor Fox came out of the building and
began yelling at her.  Pomykacz walked home without responding.

---

[6]  In a nutshell, Pomykacz has certified: "I never stalked Mayor Fox or
Ferentz.  I never engaged in any conduct that would reasonably cause them to be
in fear.  I never stealthily followed them.  I did not drive by their house on
Q Avenue with the frequency they claim.  I did not take more than the three
pictures I have described.  I never intentionally drove by defendant Ferentz's
father's house in Wildwood Crest.  I never trespassed on private property to
make observations or take photos.  I did not intentionally drive by [Ferentz's]
patrol car repeatedly."  (Pomykacz Cert. at ¶ 20)

[7]  Pomykacz asserts that she was standing in the street at the time she
took the photograph.  Defendants assert she was standing in the building's
parking lot.

4

That same night, Mayor Fox and Officer Ferentz called Cape May County Assistant Prosecutor Michelle DeWeese to consult with her about the incident that had just occurred and possibly filing stalking charges against Pomykacz.  DeWeese advised officer Ferentz about the necessary facts to support a stalking charge. By the end of the conversation, it was decided that a judge should be contacted about obtaining a warrant for Pomykacz's arrest.  Accordingly, Officer Ferentz called West Wildwood Municipal Court Judge Louis Belasco.

The record is somewhat unclear about what happened next.  A criminal complaint against Pomykacz was drafted and delivered to Judge Belasco at his home in the early morning hours of October 8, 2002.  The complaint alleged that Pomykacz stalked both Officer Ferentz and Mayor Fox.  It is unclear whether the judge held a formal hearing to determine whether probable cause for Pomykacz's arrest existed.  In any event, Officer Ferentz told Judge Belasco her version of prior events as described above, including the facts that Pomykacz had followed Officer Ferentz to her father's house and had entered onto Officer Ferentz's property to take pictures.  The record does not indicate what, if any, specific information was given about Pomykacz's actions with respect to Mayor Fox.  Based on this information, Judge Belasco determined that there was probable cause to believe that Pomykacz had committed the crime of stalking Officer Ferentz and Mayor Fox

5

and signed the warrant for Pomykacz's arrest.  A restraining
order was also issued against Pomykacz.

The police came to Pomykacz's home that morning and advised
her that a warrant for her arrest had been issued.  They asked
her to come down to the police station.  She voluntarily came to
the police station a few hours later, as she was not properly
dressed at the time the police arrived at the house.  Upon
arriving at the police station, Pomykacz was given the arrest
warrant and booked.

The Cape May County Prosecutor later downgraded the charges
against Pomykacz to harassment.  A bench trial was held in Upper
Township Municipal Court on April 30, May 28, and July 2, 2003.
Municipal Court Judge Gilbert Gilbertson found Pomykacz guilty of
harassing Officer Ferentz and not guilty of harassing Mayor Fox.
Pomykacz was fined $250.00.  She appealed her conviction.  On
appeal, the Cape May County Prosecutor conceded that the evidence
did not support the requisite state of mind for the offense of
harassment and Pomykacz was found not guilty of harassing Officer
Ferentz.

Based on these events, Pomykacz asserts the following
claims: retaliation for her monitoring activities in violation of
the First Amendment, violations of her Fourth Amendment rights,
violations of her Fourteenth Amendment procedural and substantive
due process rights, and state common law claims of false arrest

6

and malicious prosecution.  She also asserts that Officer Ferentz and Mayor Fox conspired to commit those torts, in violation of 42 U.S.C. § 1985(3) and state common law.

Pomykacz sues Officer Ferentz and Mayor Fox in both their individual and official capacities.  She also sues the Borough of West Wildwood on the theory that the Borough's policy, practice or custom violated her constitutional rights and that the Borough is vicariously liable for the acts of Officer Ferentz and Mayor Fox with respect to the state common law claims.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  "'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of

evidence to support the nonmoving party's case.'"  *Conoshenti v.*
*Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004)
(quoting *Celotex*).   The role of the Court is not "to weigh the
evidence and determine the truth of the matter, but to determine
whether there is a genuine issue for trial." *Anderson v. Liberty*
*Lobby, Inc.*, 477 U.S. 242, 249 (1986).


### III.

The Court will first address Officer Ferentz's and Mayor
Fox's arguments in favor of summary judgment and then turn to the
issue of municipal liability.


### A.

Officer Ferentz and Mayor Fox assert that they are not
subject to Section 1983 liability because they were not acting
under the color of state law when they made the criminal
complaint against Pomykacz.  They assert that they were the
victims of Pomykacz's alleged stalking and that they made their
complaint as private citizens.

Section 1983 provides: "Every person who, under color of any
statute, ordinance, regulation, custom, or usage, of any State or
Territory or the District of Columbia, subjects, or causes to be
subjected, any citizen of the United States or other person
within the jurisdiction thereof to the deprivation of any rights,

8

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C. § 1983.  A person acts "under color of state law" when he or she "exercise[s] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 24 (3d Cir. 1997) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)).

The undisputed facts present a close question as to whether Officer Ferentz and Mayor Fox were acting as state actors when they initiated criminal proceedings against Pomykacz.  Officer Ferentz and Mayor Fox contacted Cape May County Assistant Prosecutor DeWeese, who was the prosecutor on call for the night, to consult with her about possible charges against Pomykacz. Then, in the middle of the night, Officer Ferentz and Mayor Fox managed to have their criminal complaint delivered to Judge Belasco's home and a warrant issued for Pomykacz's arrest.

Private citizens do not have such ease of access to the County Prosecutor's Office or judges at any time, and certainly not after-hours.  In the normal course of a citizen's complaint of stalking or harassment, a private citizen makes a complaint to law enforcement officers who may thereafter contact the county prosecutor.  In this case, Officer Ferentz and Mayor Fox used their authority as law enforcement officials to contact the

9

county prosecutor directly.  At the very least, they were acting
simultaneously as private citizens and law enforcement officials
at that time.  Given Officer Ferentz's and Mayor Fox's unusual
access to the local criminal process and the factual subtleties
implicated in this case, the Court will assume for the purposes
of this motion only, that Officer Ferentz and Mayor Fox were
state actors subjecting them to § 1983 liability.  Accordingly,
the Court will deny summary judgment on this issue.

**B.**

The bulk of Pomykacz's claims-- her Fourth Amendment,
malicious prosecution, and false arrest claims-- all center on
whether probable cause existed to arrest and prosecute Pomykacz.[8]
Defendants assert that Judge Belasco made and independent
determination that probable cause to arrest Pomykacz existed, and
therefore summary judgment is warranted.  The Court disagrees.

The Third Circuit has stated several times that,

> [a] plaintiff may succeed in a § 1983 action for
> false arrest made pursuant to a warrant if the
> plaintiff shows, by a preponderance of the evidence:
> (1) that the police officer 'knowingly and
> deliberately, or with a reckless disregard for the
> truth, made false statements or omissions that
> create a falsehood in applying for a warrant;' (2)

---

[8]  The existence of probable cause defeats all three claims.  *Herman v.
City of Millville*, 66 F.App'x 363, 365 n. 3 (3d Cir. 2003) ("The Section 1983
claim must fail if there was probable cause to file charges, for then there was
no Fourth Amendment violation."); *Wildoner v. Bor. of Ramsey*, 162 N.J. 375
(2000) ("Probable cause is an absolute defense to Plaintiff's false arrest,
false imprisonment, and malicious prosecution claims.").

that 'such statements or omissions are material, or necessary, to the finding of probable cause.' *Meyers v. Wolkiewicz*, 50 F.App'x 549, 552 (3d Cir. 2002) (quoting *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000)); *see also Gresh v. Godshall*, No. 05-4181, 2006 U.S. App. LEXIS 3329 at *6 (3d Cir. Feb. 9, 2006)(applying standard to malicious prosecution claim).

Here, disputed issues of fact exist as to whether Officer Ferentz and Mayor Fox made false statements to Judge Belasco when applying for the warrant.  Officer Ferentz told the judge, among other things, that Pomykacz followed Officer Ferentz to her father's house and that Pomykacz once trespassed on Officer Ferentz's property.  Pomykacz specifically denies the truth of those allegations.[9]

Moreover, the Court finds that those allegedly false statements could have been material to a finding of probable cause.  In New Jersey, "[a] person is guilty of stalking, . . . if he purposefully or knowingly engages in a course of conduct directed at a specific person that would cause a reasonable person to fear bodily injury to himself or a member of his immediate family or to fear the death of himself or a member of his immediate family."  N.J.S.A. § 2c:12-10(b).  If a reasonable factfinder were to believe Pomykacz's version of the story-- that

---

[9]  The record is unclear what, if anything, Mayor Fox told the judge. Accordingly, summary judgment will be denied for this reason as well.

she only photographed Officer Ferentz three times while Officer Ferentz was on duty and never photographed Mayor Fox-- it could find that probable cause to arrest Pomykacz for stalking Officer Ferentz and Officer Fox did not exist because those actions would not cause a reasonable person to fear bodily injury.

Given the stark contrast between the Plaintiff's and Defendants' version of events, and the issues of credibility involved, the Court declines to hold that probable cause existed as a matter of law.  *See Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir. 1998) ("We have held that the question of probable cause in a section 1983 damage suit is one for the jury . . . . Summary judgment . . . is only appropriate if taking all of [the Plaintiff's] allegations as true and resolving all inferences in her favor, a reasonable jury could not find a lack of probable cause.").

Because issues of disputed fact exist as to probable cause, summary judgment will be denied with respect to Pomykacz's state law claim of malicious prosecution.  However, the Court's determination with respect to probable cause does not end the inquiry as to Pomykacz's common law false arrest claim or her § 1983 claims based on false arrest and malicious prose-cution.[10]

_____

[10]  Pomykacz apparently grounds her § 1983 malicious prosecution claim in the Fourth Amendment as well as the procedural and substantive Due Process Clauses of the Fourteenth Amendment. (Compl. ¶ 37)  While the Supreme Court has made clear that the substantive Due Process Clause cannot support a § 1983

"'[P]rosecution without probable cause is not, in and of itself, a constitutional tort.'  The type of constitutional injury the Fourth Amendment is intended to redress is the deprivation of liberty accompanying the prosecution, not prosecution itself."[11]  *DiBella v. Borough of Beachwood*, 407 F.3d 599, 602-03 (3d Cir. 2005) (quoting *Albright v. Oliver*, 510 U.S. 266 (1994)).  The deprivation of liberty a Plaintiff suffers must be "'consistent with the concept of seizure'" in order to support a Fourth Amendment claim based on a malicious prosecution theory. *Gallo v. City of Philadelphia*, 161 F.3d 169, 173 (3d Cir. 1998).  Likewise, a false arrest claim under both New Jersey law and federal law, requires a Fourth Amendment seizure consistent with the concept of arrest or detention.  *Gibson v. Superintendent of N.J. Dept. of Law and Pub. Safety*, 411 F.3d 427, 451 (3d Cir. 2005).

---

malicious prosecution claim, *see Albright v. Oliver*, 510 U.S. 266 (1994), current jurisprudence allows for such a claim to proceed "'based on the Fourth Amendment, the procedural due process clause or other explicit text of the Constitution.'"  *Gordon v. City of Philadelphia*, 40 F.App'x 729, 730 (3d Cir. 2002)(quoting *Torres v. McLaughlin*, 163 F.3d 169 (3d Cir. 1998)).  Accordingly, summary judgment will be granted with respect to the federal malicious prosecution claim insofar as it is based on the Fourteenth Amendment's substantive Due Process Clause.  With regard to the Fourth Amendment and procedural Due Process Clause claims, the parties focus their analysis on the alleged Fourth Amendment violations, making no separate argument as to procedural due process.  Accordingly, the Court will address the malicious prosecution claim as a Fourth Amendment claim and grant summary judgment with respect to the procedural due process claim.

[11]  Under New Jersey common law, no such deprivation of liberty is necessary to support a malicious prosecution claim.  *See Helmy v. City of Jersey City,* 178 N.J. 183, 190 (2003).  ("In order to establish a claim for malicious prosecution, plaintiff must prove (1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff.")

Mayor Fox and the Borough assert that no constitutional violation occurred because Pomykacz voluntarily came to the police station and was subsequently released on her own recognizance.[12]   However, Pomykacz came to the police station because she had been advised by Borough police officers appearing at her home, in uniform, that a warrant for her arrest had been issued.

The Supreme Court has noted that this type of "surrender to the State's show of authority constitute[s] a seizure for the purposes of the Fourth Amendment." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Terry v. Ohio*, 392 U.S. 1, 19 (1968) and *Bower v. County of Inyo*, 489 U.S. 593, 596 (1989)).  In *Albright*, Illinois law enforcement authorities issued an arrest warrant for Albright.  *Id.* at 268.  When Albright learned of the warrant, he surrendered to a local police detective.  *Id.*  Although the Fourth Amendment issue was not before the Court, it explicitly stated that submitting to an arrest warrant "constituted a seizure for purposes of the Fourth Amendment."  *Id.* at 271.  *See generally U.S. v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006)("A seizure occurs when there is either (a) a laying on of hands or application of physical force to restrain movement . . . or (b) submission to a show of authority.").

---

[12]   The actual warrant signed by Judge Belasco sets bail at $2500 but the parties do not dispute that Pomykacz was actually released on her own recognizance and never posted any bail.

14

Thus, the Court holds that a seizure sufficient to support Pomykacz's common law false arrest and § 1983 claims of false arrest and malicious prosecution occurred in this case.  Borough police officers showed their authority when they came to Pomykacz's house specifically to advise her that a warrant for her arrest had been issued and Pomykacz submitted to that authority when she appeared at the police station shortly thereafter.  Accordingly, summary judgment will be denied on these claims as well.

## c.

Pomykacz also asserts that her arrest for stalking violated her First Amendment rights.  "Institution of criminal action to penalize the exercise of one's First Amendment rights is a deprivation cognizable under § 1983."  *Losch v. Borough of Parkesburg,* 736 F.2d 903, 907-08 (3d Cir. 1984).  To establish a claim for First Amendment retaliation outside the employment context, Pomykacz must demonstrate that: (1) she engaged in protected activity; (2) the government responded with retaliation; and (3) the protected activity was the cause of the retaliation.[13]  *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d

---

[13]  The Supreme Court has recently held that the absence of probable cause is essential to proving the causal link between the alleged retaliatory arrest and a plaintiff's protected speech.  *Hartman v. McIntosh*, 126 S.Ct. 1695 (2006).  As explained *supra*, material issues of fact exist as to whether probable cause to arrest Pomykacz existed.

Cir. 2003).

Pomykacz asserts that her arrest for stalking was an attempt to silence Pomykacz in retaliation for actions taken in furtherance of her political activism-- namely, monitoring the actions of Officer Ferentz and Mayor Fox and voicing her concerns about their alleged improper conduct to other community leaders and concerned West Wildwood citizens.

Pomykacz has put forth sufficient evidence that she was a concerned citizen who at times spoke her mind to Borough officials and other citizens about her concerns regarding the official conduct of the police department and the mayor.  Such speech is clearly protected by the First Amendment.[14]  *See Mills v. Alabama*, 384 U.S. 214, 218 (1966) ("a major purpose of [the First] Amendment was to protect the free discussion of

---

[14]  Pomykacz makes the blanket assertion that "the observation and monitoring of public officials is protected by the [F]irst [A]mendment."  The Court does not necessarily agree.  An argument can be made that the act of photographing, in the abstract, is not sufficiently expressive or communicative and therefore not within the scope of First Amendment protection-- even when the subject of the photography is a public servant. *See generally Tenafly Eruv Ass'n, Inc. v. Bor. of Tenafly*, 309 F.3d 144, 160 (3d Cir. 2002)(only "activity [that is] sufficiently imbued with elements of communication [] fall within the scope of the First and Fourteenth Amendments.").  Indeed, the Third Circuit has stated, albeit in dicta, that "videotaping or photographing the police in the performance of their duties on public property *may* be a protected activity. . . . [P]hotography or videography *that has a communicative or expressive purpose* enjoys some First Amendment protection." *Gilles v. Davis*, 427 F.3d 197, 212 n.14 (emphasis added).  However, in this case the record supports the conclusion that Pomykacz's photography and monitoring was part and parcel of her political activism and that Officer Ferentz and Mayor Fox knew as much.  Pomykacz expressed her concerns about construction at the municipal building and the relationship between Officer Ferentz and Mayor Fox.  She was arrested because, among other things, she took a picture of Officer Ferentz in the municipal building while Mayor Fox was there. Thus the photography was tightly intertwined with Pomykacz's speech and it is appropriate to address her speech and conduct together.

governmental affairs."); *Roth v. United States*, 354 U.S. 476, 484 (1957) ("The protection given speech and press was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.").

Additionally, Pomykacz has put forth sufficient evidence to defeat summary judgment with respect to the second and third prongs of her First Amendment retaliation claim. She has put forth sufficient evidence that Officer Ferentz and Mayor Fox intentionally misrepresented the facts of the case in order to effectuate Pomykacz's arrest. The facts surrounding the incident, viewed in a light favorable to Pomykacz, give rise to a reasonable inference of causation. If Pomykacz proves her version of events, a reasonable factfinder could conclude that Officer Ferentz and Mayor Fox were motivated to effectuate her arrest because they disliked what she was saying to others in the community and that they would not have arrested her in the absence of that speech. *See Hartman v. Moore,* 126 S.Ct. 1695, 1704 (2006) ("Demonstrating that there was no probable cause for the underlying criminal charge will tend to reinforce the retaliation evidence and show that retaliation was the but-for basis for instigating the prosecution.") Accordingly, summary judgment on the First Amendment claim will be denied.

17

**D.**

The Court next turns to Pomykacz's conspiracy claims.  To succeed on her § 1985(3) conspiracy claim, Pomykacz must establish that the defendants were "motivated by a class-based invidiously discriminatory animus," and that they "conspired to deprive plaintiff of the equal protection rights of the laws or of equal privileges and immunities under the laws." *Bougher v. University of Pittsburgh*, 882 F.2d 74, 79 (3d Cir. 1989); *see also Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006); *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).  Pomykacz has not put forth any evidence that either Officer Ferentz or Mayor Fox were motivated by class-based discriminatory animus.  Indeed, Pomykacz's theory of her case is that Officer Ferentz and Mayor Fox were motivated by Pomykacz's public criticisms of, and attempts to document, what she perceived to be wrongful conduct in the performance of their public duties.  Pomykacz has neither alleged, nor does the record demonstrate, any class-based motive which would support a § 1985(3) claim.  Accordingly, summary judgment will be granted in favor of Defendants.

However, no such motive is required to support a civil conspiracy claim under New Jersey common law.[15]  None of the

---

[15]  The elements of civil conspiracy in New Jersey are: (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) an unlawful purpose or a lawful purpose achieved by unlawful means; and (4) special damages.  *Morganroth & Morganroth v. Norris, McLaughlin &*

18

Defendants make any argument with respect to the common law conspiracy claim other than to assert that summary judgment should be granted because all the tort claims which underlie the claim are legally infirm.  Accordingly, since the Court will not grant summary judgment on the underlying tort claims, summary judgment on the state law civil conspiracy claim will also be denied to the extent that the claim is premised upon claims that remain in the case.

### E.

The Court next turns to the issue of Officer Ferentz's and Mayor Fox's immunity.  They both assert that they are entitled to qualified immunity from the § 1983 claims.  Officer Ferentz further asserts that she is entitled to statutory immunity under New Jersey law.

Officer Ferentz and Mayor Fox are entitled to qualified immunity from the § 1983 claims "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004).

With respect to Pomykacz's Fourth Amendment false arrest and

---

*Marcus*, 331 F.3d 406, 414 (3d Cir. 2003); *Perry v. Hon. Daniel Bernardin*, No. 04-6102, 2005 U.S. Dist. LEXIS 18115 at *19-20 (D.N.J. August 18, 2005).

malicious prosecution claims, Officer Ferentz and Mayor Fox are not entitled to qualified immunity.  According to Pomykacz, Officer Ferentz and Mayor Fox knew they did not have probable cause to have her arrested and made deliberate misrepresentations to the judge who issued the warrant in order to effectuate her arrest.  A reasonable official would know that these actions violated Pomykacz's clearly established constitutional rights. *See Cuvo v. De Biasi*, 169 F.App'x 688 (3d Cir. 2006) ("It is sufficiently clear that the officers' conduct-- arresting [plaintiff] . . . absent probable cause-- violates the Fourth Amendment and that a reasonable official would understand as much."); *Gilles*, 427 F.3d at 205 ("a police officer is entitled to qualified immunity unless it would have been clear to a reasonable officer there was no probable cause to arrest"); *cf. Malley v. Briggs,* 475 U.S. 335, 344-45 (1986) ("Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost.").  Accordingly, viewing the facts in the light most favorable to Pomykacz, Officer Ferentz and Mayor Fox are not entitled to qualified immunity with respect to the Fourth Amendment claims and summary judgment will be denied.

Officer Ferentz and Mayor Fox are also not entitled to qualified immunity with respect to the First Amendment retaliation claim.  A reasonable official would know that

20

arresting someone in retaliation for engaging in protected speech violates clearly established rights. *See Losch,* 736 F.2d at 907-08 ("Institution of criminal action to penalize the exercise of one's First Amendment rights is a deprivation cognizable under § 1983.").

Lastly, Officer Ferentz is not entitled to state law immunity from Pomykacz's state law claims. As discussed *supra*, Pomykacz asserts that Officer Ferentz deliberately made false statements in order to obtain a warrant that she knew was not supported by probable cause. While the New Jersey Tort Claims Act does provide immunity from liability in certain circumstances, the Act expressly excepts from protection public employees whose acts constitute "willful misconduct." N.J.S.A. § 59:3-14. Officer Ferentz's actions, if proven true, fall within the scope of willful misconduct and therefore she is not entitled to immunity under the New Jersey Tort Claims Act. *See Alston v. City of Camden*, 168 N.J. 170, 185 (2001) ("willful misconduct will fall somewhere on the continuum between simple negligence and the intentional infliction of harm").[16]

### F.

Pomykacz also asserts that the Borough of West Wildwood is

---

[16] The Court also holds that Mayor Fox is not entitled to state law immunity for the same reasons that Officer Ferentz is not entitled to immunity. Indeed, Mayor Fox never asserted such immunity.

subject to liability for the alleged torts against her.  "[A] municipality can be held liable as a person under section 1983 when it unconstitutionally implements or enforces 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by' the officers of that municipality." *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000) (quoting *Monell v. New York Dep't Of Soc. Servs.*, 436 U.S. 658, 690 (1978)).  "It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 848.

Specifically,

[A] municipality may only be liable for the torts of its employees in one of three ways: First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989); second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy, *Pembauer v. City of Cincinnati*, 475 U.S. 469 (1986); third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

*McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005).

With respect to the first form of liability, Pomykacz points

22

to an alleged police department "policy" of not allowing citizens to take photographs of its police officers.  In support of her policy argument, she relies upon the deposition testimony by the Borough's Police Chief, Alan Fox:

> Q: Okay, and is there then a policy– a verbal policy of the West Wildwood Police Department that citizens who take pictures of officers should be prosecuted?
> A: Under certain circumstances, of course.
>
> Q: What are those circumstances?
>
> A: If someone wants to take a picture of me and they ask me and I say in my uniform and all, sure but you just don't come up to a police department and start snapping pictures of police officers whether they're in uniform or not.  It puts us on edge of why this is happening.
>
> Q: Is there a statute that prohibits photographing police officers?
>
> A: There is a – when it comes to harassment and stalking, you take a particular situation like that and you call a judge and let the judge decide what to do.  As far as taking– following cops around and taking pictures of them, no.  You just don't do that.

(Pl. Ex. J (Deposition of Chief Fox) p. 39-40)

Viewed in the light most favorable to Pomykacz, the Court cannot interpret this testimony as evidence of a policy of retaliation against citizens who photograph police officers.  At most, the testimony indicates that photography rising to the level of criminal activity–– namely harassment or stalking–– will be prosecuted.  With regard to photography that does not constitute criminal behavior, Chief Fox merely testified, "You

just don't do that."[17]  Such a statement cannot support an
inference of a policy or custom.

Pomykacz further relies on two incidents, one in 1993 and
one in 2005, which she asserts establish a pattern of retaliation
against citizens who photograph police officers.  With regard to
the first incident, her evidence consists of arrest warrants
issued in 1993 against two women, charging them with trespassing
and harassment for entering onto the property of a Borough police
officer to videotape his property.  However, Pomykacz does not
put forth any evidence as to the disposition of the charges.
Without some evidence that the women did not in fact commit the
alleged crimes, or that the charges were initiated without
probable cause, the fact that warrants were issued in connection
with videotaping activity does not lend support to Pomykacz's
assertion that the Borough has a custom or practice of
retaliating against citizens who legally videotape or photograph
police officers.

With regard to the 2005 incident, Pomykacz points to the
testimony of Thomas Micelli, another Borough police officer.
Micelli testified that in the summer of 2005, he received a
complaint from Officer Ferentz that a man named Chuck Frederick

_____

[17]  The Court does not find it at all unusual or improper that law
enforcement officers would be suspicious of being photographed on duty if they
do not know why the photographs are being taken.  There are many malevolent
reasons why someone would photograph an officer on duty that do not implicate
First Amendment interests-- to identify a confidential informant, to assist in
planning a crime, or to interfere with an official investigation, for example.

was photographing her house.  There is no evidence in the record that any formal action was ever taken by the police department in connection with this incident.  Thus, like the 1993 incident, the Court does not find that this evidence supports a finding of any custom, practice or pattern of conduct by the Borough.

The evidence taken as a whole is insufficient to support a finding of a policy or custom which would support municipal liability.  Accordingly, summary judgment in favor of the Borough with regard to the § 1983 claims will be granted insofar as they are based on an alleged municipal policy or custom.

However, summary judgment is not warranted insofar as Pomykacz's § 1983 claims are based on the theory that Mayor Fox's actions in initiating the criminal charges against Pomykacz constituted an act of official government policy.  "The Supreme Court's decision in *Pembauer* makes clear that an official with policymaking authority can create official policy, even by rendering a single decision."  *McGreevy*, 413 F.3d at 367-68. Whether Mayor Fox is a final policymaker is an issue of New Jersey law.  *Id.* at 168; *Jett*, 491 U.S. at 737.

The powers of borough mayors are set forth in the New Jersey Statutes:

a.  The mayor shall be the head of the municipal government.

b.  The mayor shall have all those powers designated by general law.

25

. . .

g.  The mayor shall nominate and, with the advice
and consent of council, appoint all subordinate
officers of the borough . . .

h.  The mayor shall see to it that the laws of the
State and the ordinances of the borough are
faithfully executed. . . . He shall maintain peace
and good order and have the power to suppress all
riots and tumultuous assemblies in the borough.

N.J.S.A. § 40A:60-5.  Thus, under New Jersey law, Mayor Fox is
granted broad authority over Borough policy, specifically
including the power to "see to it that the laws of the State and
ordinances of the borough are faithfully executed" and "maintain
peace and good order."  *Id.*  If, as alleged, Mayor Fox instituted
unwarranted criminal proceedings against Pomykacz in retaliation
for her exercise of her First Amendment right to criticize
municipal officials, a jury could find that he did so in his role
as the Borough's chief policymaking officer.  Therefore, the
Borough might be liable for these alleged violations, and summary
judgment will be denied.[18]

Lastly, summary judgment will be granted with respect to the
Borough's alleged vicarious liability under the New Jersey Tort
Claims Act.  As discussed supra, the Tort Claims Act denies
individual officials immunity when their acts constitute willful

---

[18]  The third form of municipal liability, ratification by an official
with authority, is inapplicable to this case, as Pomykacz alleges that Mayor
Fox and Officer Ferentz acted together in making false statements to procure a
warrant for Pomykacz's arrest, not that Mayor Fox later ratified actions taken
by Officer Ferentz.

misconduct.  *See* N.J.S.A. § 59:3-4.  Similarly, the Act limits a public entity's vicarious liability by excluding from liability "acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct."  N.J.S.A. § 59:2-10.  Thus, as a necessary corollary to the Court's holding that Officer Ferentz and Mayor Fox are not entitled to state law immunity, the Court also holds that the Borough cannot be held vicariously liable for the alleged acts of either Officer Ferentz or Mayor Fox because the acts alleged constitute willful misconduct.  *See Linden v. Spagnola*, No. 99-2342, 2002 U.S. Dist. LEXIS 14573 at *42-43 (D.N.J. June 27, 2002) (granting summary judgment in favor of the City of Patterson pursuant to N.J.S.A. § 59:2-10 on plaintiff's false arrest, malicious prosecution, assault & battery, and conversion tort claims because the evidence demonstrated that police officers "acted either criminally, maliciously, or that they committed willful misconduct.").  Accordingly, summary judgment will be granted to the Borough with respect to vicarious liability for the state law claims of false arrest, malicious prosecution, and civil conspiracy.

## IV.

For the foregoing reasons, the Court will grant in part and deny in part the Motions for Summary Judgment.  Summary judgment in favor of Defendants Fox and Ferentz will be granted as to the

§ 1983 malicious prosecution claim only insofar as it is premised on the substantive or procedural Due Process Clause of the Fourteenth Amendment, and the § 1985(3) conspiracy claim.  The motions of Mayor Fox and Officer Ferentz for summary judgment will be denied in all other respects.  The Borough's Motion for Summary Judgment will be granted with respect to all state law claims and the § 1985(3) conspiracy claim.  With respect to the § 1983 claims, the Borough's Motion will be granted as to municipal liability based on an alleged Borough policy or custom but denied as to municipal liability based on Mayor Fox's status as a final policymaker.  An appropriate order will be issued.

Date: July  20th , 2006

s/Joseph E. Irenas
JOSEPH E. IRENAS, S.U.S.D.J.